UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DOUGLAS W. GUNTLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:19-CV-103-PPS |
| | ) |
| ANDREW M. SAUL, | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Douglas Guntle appeals the Social Security Administration's decision to deny his application for supplemental security income. Guntle did not attend the hearing before the Administrative Law Judge (ALJ), and the ALJ found that Guntle waived his right to appear. This makes for a more limited record than in the usual Social Security appeal. The only people present at the hearing were Guntle's attorney and a vocational expert (VE). Ultimately, the ALJ found Guntle had two severe impairments: degenerative disc disease and borderline intellectual functioning. [Tr. 20.][1] The ALJ went on to determine that Guntle was not disabled, he had the residual functional capacity (RFC) to perform medium work with some postural restrictions, and that Guntle could "understand, remember, and carryout unskilled tasks; relate on at least a superficial basis on an ongoing basis with coworkers and supervisors; attend to task for sufficient

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 6.

periods of time to complete tasks; and manage the stresses involved with work." [Tr. 26.] Because I find that the ALJ properly analyzed the pertinent issues and supported her decision with substantial evidence, I will affirm the ALJ's decision.

## Discussion

I'll start, as customary, with the standards that govern my decision-making in this appeal. My job is not to determine from scratch whether or not Guntle is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not particularly demanding. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). But there has to be more than a "scintilla" of evidence. *Id.* This means that I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

Guntle sets forth three arguments in support of remand: (1) the ALJ failed to properly address his moderate limitation in concentration, persistence or pace in the

2

RFC and hypothetical questions to the VE; (2) the ALJ failed to properly consider that Guntle is functionally illiterate; and (3) the ALJ erred when she discredited Guntle's credibility due to a perception of unexplained gaps in his treatment history. [DE 9 at 3.] Each argument will be addressed in turn.

I. **Whether the ALJ Properly Accounted for Guntle's Moderate Limitation in Concentrating, Persisting, or Maintaining Pace**

Guntle first argues that the ALJ failed to account for his moderate limitation in concentrating, persisting, or maintaining pace both in the RFC and in the hypotheticals posed to the VE. [DE 9 at 14.] At Step Three, the ALJ found that Guntle had a moderate limitation with regard to concentrating, persisting, or maintaining pace. [Tr. 25.] The ALJ supported this conclusion by noting that Guntle had reported difficulty following written instructions as he does not understand what he is reading, but he is good at following verbal instructions if he has an explanation of what needs to be done. [Tr. 25; 182.] The ALJ found that "[t]aking this evidence together, it is concluded that [Guntle] does have problems in this area, but not that they are greater than moderate in degree." [Tr. 25.] She therefore concluded there was "no functional consequence of the claimant's limitation in this area beyond an inability to sustain detailed or complex work processes, and . . . a restriction to simple repetitive tasks encompasses that restriction." [Tr. 25.] The ALJ went on to determine that Guntle's moderate deficiency in concentrating, persisting, or maintaining pace at Step Three did not represent a separate functional limitation, or one that is different in degree, from the restriction to simple, repetitive tasks that was assessed at Step Four. [Tr. 26.] Based on this RFC, the

3

ALJ found that Guntle could not perform any past relevant work (Guntle was previously an unskilled construction worker and an industrial cleaner), but that he could work as a medium, unskilled warehouse worker, landscape specialist, or merchandise deliverer, or as a light, unskilled power screw driver operator, houseman, or collator operator. [Tr. 30-31.]

As noted, the ALJ found Guntle had a "moderate" limitation with regard to concentrating, persisting, or maintaining pace, which encompasses the ability to focus on work and stay on-task. [Tr. 25.] In assessing Guntle's RFC, the ALJ determined he retained the ability to understand, remember, and carryout unskilled tasks, related on at least a superficial basis on an ongoing basis with coworkers and supervisors, could attend to task for sufficient periods of time to complete tasks, and manage the stresses involved with work. [Tr. 26.]

In seeking remand, Guntle leans heavily on *Winsted v. Berryhill*, in which the Seventh Circuit reiterated that "[a]gain and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." 923 F.3d 472, 476-77 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *O-Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004)). The Seventh Circuit went on to specify that in most cases, using terms like

"simple, repetitive tasks" on their own, is insufficient to present the claimant's full limitations. *Id.* at 477. The ALJ need not use any particular words, but it is well established that she must direct the VE to consider the problems with concentration, persistence, and pace that sufficiently captures the plaintiff's deficiencies in those areas. *Id.* When an ALJ relies on an expert's opinion to find the plaintiff has limitations in concentration, persistence, or pace, the reviewing court considers whether the ALJ's hypothetical conveys the limitations found by the expert. *Id.*; *see also DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019); *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination.").

At the hearing, the ALJ gave the following hypothetical to the VE:

> the individual can lift and/or carry 50, 5-0 pounds occasionally; lift and/or carry 25 pounds frequently; stand and/or walk for about six hours and sit for up to six hours in an eight hour work day, with normal breaks; the individual can frequently do all postural maneuvers, and that includes climbing ramps and stairs, ladders, ropes and scaffolds, balancing, stopping, kneeling, crouching or crawling. Those are all frequent. The individual can understand, remember and carry out unskilled tasks; the individual can relate at least on a superficial basis on an ongoing basis with coworkers and supervisors; the individual can attempt a task for sufficient periods of time to complete tasks; the individual can manage the stresses involved with work.

[Tr. 49-50.] The ALJ then incorporated these same limitations into the RFC. [Tr. 26.] In preparing the hypothetical and RFC, the ALJ relied on two state agency psychological consultants (whose opinions the ALJ gave great weight), who concluded that Guntle had moderate difficulties in maintaining concentration, persistence or pace, but that

5

Guntle still retained the ability to understand, remember, and carry out unskilled tasks, attend to task for sufficient periods of time to compete tasks, and manage the stresses involved with work. [Tr. 26, 60-62; 72-74.] Thus, unlike *Winsted*, *DeCamp*, and the cases cited by Guntle, here the ALJ *did* account for Guntle's moderate limitation in concentration, persistence, or pace in the hypotheticals and RFC. Moreover, the ALJ not only addressed the complexity of the tasks that Guntle could perform, but also his "ability to stick with a task over a sustained period." *Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014).

The ALJ's RFC and hypothetical is supported by medical evidence in the record. She relied upon the opinions of the two state agency psychological consultants and found these opinions consistent with the totality of the medical evidence. This included Guntle's own assessment that while he had difficulty following written instructions because he does not understand what he is reading, he is good at following verbal instructions because he had an explanation of what needed to be done, and he could pay attention for about 30 minutes at a time and was able to complete tasks that he started. [Tr. 25, 182.] Thus, the ALJ fully explained the reasons and supporting evidence for her finding of moderate limitations with regard to concentrating, persisting, or maintaining pace, and sufficiently included in the RFC and hypotheticals that Guntle could understand, remember, and carry out unskilled tasks, as well as attend to task for a sufficient period of time to complete tasks. This is sufficient. *See, e.g., Nicholas v. Saul*, No. 18-2217, 2019 WL 7500242, at *4 (C.D. Ill. Oct. 8, 2019) (finding

the ALJ did account for moderate limitation in concentration, persistence, or pace where the ALJ found the plaintiff could interact with others, persist in activities, and understand and follow directions); *Marley v. Colvin*, No. 1:14-cv-157, 2015 WL 3999484, at *6 (N.D. Ind. July 1, 2015) (affirming Commissioner's decision where ALJ relied on a medical source's RFC to formulate the hypothetical to the VE, the medical source found the claimant could perform simple work and "attend to task for sufficient periods of time to complete tasks," and therefore the ALJ adequately accounted for moderate limitations in concentration, persistence, and pace); *Woods v. Berryhill*, No. 1:16-cv-108-SLC, 2017 WL 4325302, at *6-7 (N.D. Ind. Sept. 29, 2017) (finding the RFC and hypotheticals did account for moderate deficits in concentration, persistence, or pace); *Moore v. Colvin*, No. 1:14-cv-293-SLC, 2016 WL 1253545, at *9-10 (N.D. Ind. Mar. 31, 2016) (concluding the ALJ adequately accounted for finding of moderate limitations in concentration, persistence, or pace, when she relied upon medical source opinions and stated the claimant could sustain and attend to tasks throughout the day).

Finally, Guntle does not point me to any medical source opinion indicating he has deficits in concentration, persistence, or pace that would impact his ability to perform either light or medium unskilled work. "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c)); *see also Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the

7

severity of impairments remains with the claimant."). Nor does Guntle present any argument or evidence that he is actually not capable of performing unskilled work and completing tasks. [DE 9 at 13-16.] The Seventh Circuit recently affirmed a similar decision of the Commissioner where it was "unclear what kinds of work restrictions might address [claimant's] limitations in concentration, persistence, or pace because he hypothesizes none." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). There, because the claimant did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record didn't support any, the Court found there was "no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand." *Id.*

In the absence of evidence to the contrary, and based on the rather sparse record before me, including the ALJ hearing which Guntle did not attend, I find that the ALJ adequately accounted for Guntle's moderate limitations in concentration, persistence, or pace in the RFC and hypotheticals posed to the VE.

## II.     Whether the ALJ Properly Addressed Guntle's Alleged Illiteracy

Guntle's argument that the ALJ "failed to address or discuss Guntle's illiteracy" [DE 9 at 18] is simply not true. The ALJ *did* address Guntle's borderline intellectual functioning, and stated "a response to a request for records from the claimant's school shows that most records are destroyed five years after graduation, but this response did confirm that [Guntle] received special services while in school, at least in math." [Tr. 21.] The ALJ also noted that during the psychological consultative examination, Guntle

8

reported a history of learning disability with problems with reading and writing. [*Id.*] An administration of the Wechsler Adult Intelligence Scale, Fourth Edition, resulted in all scores in the extremely low range (with the exception of perceptual reasoning which was in the borderline range). [*Id.*] The ALJ observed Guntle was diagnosed with mild intellectual disability. [*Id.*]

Going further, in analyzing Guntle's ability to understand, remember, and apply information, the ALJ stated:

> [Guntle] reported he has difficulty following written instructions as he does not understand what he is reading, but he is good at following verbal instructions as he has explanations of what needs to be done . . . [Guntle] also stated he is able to count change but does not pay bills, handle a savings account, or use a checkbook and money orders as his wife pays the bills due to his problems with reading and writing.

[Tr. 25.] The ALJ concluded there was "little indication that the claimant's mental impairments have affected his ability to understand, remember, or apply information at any greater than a mild degree." [*Id.*]

And again, when evaluating Guntle's concentrating, persisting, or maintaining pace, the ALJ noted that Guntle reported he has difficulty following written instructions as he does not understand what he is reading, but he is good at following verbal instructions and can pay attention for about 30 minutes at a time, and can complete tasks he beings. [*Id.*] The ALJ found "no functional consequence of [Guntle's] limitation in this area beyond an inability to sustain details or complex work processes, and, in the case at hand, a restriction to simple repetitive tasks encompasses that restriction." [*Id.*]

9

The ALJ acknowledged Guntle's claim that he is unable to work due to a comprehension and learning disability [Tr. 27] and once again, when assessing the RFC, commented that Guntle stated he has problems with written instructions as he does not understand what he is reading. [Tr. 29.] So the ALJ did indeed discuss and address Guntle's difficulty reading.

Illiteracy is defined in the regulations as follows: "[i]lliteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 416.964(b)(1). Here, nothing Guntle cites in his memorandum supports a conclusion that he is illiterate, as defined in the regulations.

For example, Guntle cites his self report of difficulty in doing job-related paperwork, paying bills, and following written instructions [DE 9 at 18; Tr. 178, 180, 184], but these subjective reports do not establish that Guntle cannot read or write simple messages. Guntle also mentions that he cannot get a driver's license because he is unable to read/understand what he reads [DE 9 at 18; Tr. 184], but the psychological consultative examiner specifically noted that Guntle was "unclear about his abilities at reading and writing" because, despite Guntle's claim that he could not get a driver's license, Guntle had a driver's license that expired while he was incarcerated. [Tr. 445.] Moreover, despite the low scores on Guntle's intelligence test, the examiner did not note that Guntle had any difficulty taking the test because of an inability to read. [Tr.

444-45.] Finally, although Guntle cites his ninth grade education with special education services, the school report only confirms that he attended a special education class for math – it does not mention reading or writing. [DE 9 at 18; Tr. 163.] Taking all of this into consideration, I cannot say that Guntle was illiterate under the applicable regulations or that the ALJ improperly assessed his literacy.

III.  **Whether the ALJ Conducted A Flawed Credibility Assessment**

Guntle's only argument in support of his theory that the ALJ conducted a flawed credibility assessment is that the ALJ improper relied upon a gap in Guntle's medical treatment. The ALJ did comment that Guntle "has not generally received the type of medical treatment one would expect for a totally disabled individual as the record reflects gaps in the claimant's history of treatment." [Tr. 28.] She continued, noting that although Guntle "has received some treatment for the allegedly disability impairment(s), that treatment has been essentially routine and/or conservative in nature as it has consisted primarily of medications." [*Id.*]

Let's back up for a minute. An ALJ's evaluation of a claimant's subjective allegations regarding pain or other symptoms is a two-step process. *See* SSR 16-3p, 2017 WL 5180304. First, objective medical evidence must demonstrate the existence of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 416.929(b); SSR 16-3p at *3-4. Second, the ALJ considers all of the evidence in the record, including medical and opinion evidence, and the factors listed in the regulations such as daily activities; the location, duration,

11

frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of medication; treatment of symptoms other than medication; and any measures used to relieve the symptoms. 20 C.F.R. § 416.929(c)(3); SSR 16-3p at *4-8. The ALJ considers whether there are inconsistencies or conflicts in the evidence, and a claimant's symptoms will be determined to diminish the capacity for basic work activities to the extent that the alleged limitations and restrictions due to the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 416.929(c)(4).

Here, the ALJ found that Guntle's impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record. [Tr. 27.] The ALJ then thoroughly explained the reasons for her finding, and addressed all of the factors described in the regulations and Ruling. [Tr. 27-29.]

Guntle argues the ALJ erred in this analysis, but he only alleges error in the consideration of one factor – the nature of Guntle's treamtent. [DE 9 at 22.] The ALJ did take into consideration that despite alleging limitations due to pain, Guntle had no treatment in 2015 and no treatment since late 2016. [Tr. 28-29, 182.] The treatment records in evidence only cover the period from April through October 2016. [Tr. 450-504.] The ALJ also found that although Guntle received some treatment, it was

essentially routine or conservative in nature. [Tr. 28.] Additionally, in her written opinion, the ALJ did comment on the lack of medical records showing Guntle received any treatment for his back in 2015, and went through the few records in 2016 in detail. [Tr. 21.] The ALJ noted that Guntle underwent an initial physical therapy evaluation on June 8, 2016, for low back pain, and was referred back to his physician before proceeding with physical therapy, but he did not return for physical therapy for any further treatment. [*Id.*]

Guntle argues that the ALJ cannot rely on Guntle's sparse treatment history without further exploring possible reasons such as lack of insurance or other good reasons for not obtaining treatment. [DE 9 at 22-23.] It is true that failure to explore a claimant's "reasons for not seeking treatment" is erroneous. *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). But in this case, what alternative did the ALJ have to ruling on the medical evidence in front of her? Guntle did not attend the hearing, so the ALJ could not ask any followup questions about the treatment gaps or sparse treatment history.

Finally, Guntle only challenges this one factor in the ALJ's assessment of his credibility. The ALJ did consider the other factors regarding Guntle's symptoms and limitations, and supported those other factors with substantial evidence. [Tr. 27-30.] Even if the assessment of this one factor (treatment history) was not perfect, I still think the ALJ's credibility assessment, on the whole, was sufficient. *See Harvey v. Colvin*, No. 13 CV 3247, 2015 WL 3419737, at *7 (N.D. Ill. May 28, 2015) (upholding ALJ's evaluation

of credibility for other reasons even though the Court found that the ALJ's consideration of one reason was on "shaky ground").

## Conclusion

For the reasons set forth above, the final decision of the Commissioner of Social Security denying Plaintiff Douglas Guntle's application for supplemental security income is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

**SO ORDERED**.

ENTERED: February 5, 2020.

/s/ Philip P. Simon  
**PHILIP P. SIMON, JUDGE**  
**UNITED STATES DISTRICT COURT**